242 F.2d 81
 John T. MENZIES, President of The Crosse & Blackwell
Company; Charles P. McCormick, President of McCormick &
Company, Inc., and Samuel H. Hoffberger, President of
Pompeian Olive Oil Corporation, Appellants,
v.
FEDERAL TRADE COMMISSION, Appellee.
 No. 7352.
 United States Court of Appeals Fourth Circuit.
 Argued Jan. 23, 1957.
Decided March 7, 1957.
Writ of Certiorari Denied May 13, 1957.
See 77 S.Ct. 863.
 
 G. C. A. Anderson, Baltimore, Md., and James W. Cassedy, Washington, D.C. (A. Adgate Duer, Niles, Barton, Yost & Dankmeyer, Anderson Barnes & Coe, Baltimore, Md., and Morton J. Hollander, Washington, D.C., of brief), for appellants.
 Robert B. Dawkins, Asst. Gen. Counsel, Federal Trade Commission, Washington, D.C., (Earl W. Kintner, Gen. Counsel, and John T. Loughlin, Atty., Federal Trade Commission, Washington, D.C., on brief), for appellee.
 Before PARKER, Chief Judge, and HARRY E. WATKINS and GILLIAM, District judges.
 PARKER, Chief Judge.
 
 
 1
 These are appeals from an order enforcing subpoenas duces tecum issued by the Federal Trade Commission pursuant to section 9 of the Federal Trade Commission Act, 15 U.S.C.A. § 49. The subpoenas were issued in proceedings before the Commission in which three corporations were charged with violation of section 2(d) of the Clayton Act as amended by the Robinson-Patman Act. 15 U.S.C.A. § 13(d). The contentions on appeal are that the subpoenas are invalid on the ground that the Commission does not have power to issue subpoenas under section 9 of the Federal Trade Commission Act in proceedings had before it for enforcement of the Clayton Act and that, even if this power exists, the subpoenas are violative of the provisions of the Fourth Amendment to the Constitution of the United States.
 
 
 2
 The facts are fully stated and the applicable statutory provisions are accurately set forth and analyzed in the opinion of the District Judge. See Federal Trade Commission v. Menzies, 145 F.Supp. 164. We note that like action was taken in the case of Federal Trade Commission against Reed in the Northern District of Illinois, not yet reported, although not followed in Federal Trade Commission v. Rubin, D.C.S.D.N.Y., 145 F.Supp. 171. With due respect to the opinion of the judge in the case last mentioned, which we have carefully read and considered, we entertain no doubt as to the correctness of decision of the District Judge in this case and feel that little need be added to his opinion.
 
 
 3
 It is not without significance that for more than forty years the Federal Trade Commission, in proceedings had before it under the Clayton Act, has issued subpoenas such as it issued here and has issued many thousands of such subpoenas. While we agree that this is not conclusive as to its power to issue them, it is not reasonable to suppose that the power would have gone unchallenged for so long a period in such a sensitive field of the law, if there were any real doubt as to its existence.
 
 
 4
 The Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq., and the Clayton Act, 15 U.S.C.A. § 12 et seq. were before Congress at the same time and were in pari materia, dealing with the same general subject matter, restraints of trade and unfair competition. The Clayton Act, 38 Stat. 730, laid down substantive rules of law and provided for their enforcement by courts and administrative agencies. The Federal Trade Commission Act created the Commission as an administrative agency and conferred certain powers upon it, among others the power to enter cease and desist orders upon a finding of unfair competition and to conduct investigations as to 'the organization, business, conduct, practices, and management of any corporation engaged in commerce, excepting banks and common carriers * * * and its relation to other corporations and to individuals, associations and partnerships'. 38 Stat. 717-724, 15 U.S.C.A. § 46. Authority to enforce compliance with the provisions of the Clayton Act, except as to banks and common carriers, was conferred by section 11 of that act on the Federal Trade Commission; and this could mean nothing else than that, in carrying out this provision, the Commission should exercise the powers with respect to investigations and hearing vested in it by the act of its creation. Among such powers, was the power to examine documents and witnesses and issue subpoenas. This was provided in section 9 of the Act, the pertinent portion of which is as follows:
 
 
 5
 'Sec. 9. That for the purposes of this Act the commission, or its duly authorized agent or agents, shall at all reasonable times have access to, for the purpose of examination, and the right to copy any documentary evidence of any corporation being investigated or proceeded against; and the commission shall have power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation. Any member of the commission may sign subpoenas, and members and examiners of the commission may administer oaths and affirmations, examine witnesses, and receive evidence. * * *.'
 
 
 6
 Contention is made that the language 'for the purposes of this Act' limits the power of examining witnesses and issuing subpoenas to proceedings and investigations authorized by the act creating the Commission and that the power may not be exercised in an enforcement provision which the Commission is authorized by the Clayton Act to conduct. This, we think, is an unreasonable and forced construction of the language used, the manifest purpose of which was to give the Commission the power of subpoena and examination in connection with any investigation or proceeding which it was authorized by law to conduct. The language in question is 'for the purposes of this Act;' and one of the purposes of the act was to vest the Commission with adequate powers to conduct investigations and proceedings with respect to restraints of trade and unfair competition. When duties of investigation or enforcement are imposed upon the Commission by another act or acts, the reasonable intendment is that it shall exercise the power conferred upon it by law in the discharge of such duties. As was well said in the opinion of the Commission:
 
 
 7
 'The Federal Trade Commission Act and the Clayton Act were enacted as remedial measures designed to correct apparent deficiencies in the Sherman Act (15 U.S.C.A. §§ 1-7, 15 note) through administrative proceedings. They are statutes in pari materia which were enacted in the same session of Congress, and, therefore, are to be construed together so as to reinforce their common legislative purpose.
 
 
 8
 'The Federal Trade Commission was designated as a major agency for enforcement of sections 2, 3, 7 and 8 of the Clayton Act. That designation necessarily implied that the Commission was to be aided in the effective discharge of its duties in adversary proceedings by the compulsory processes which were being made available to it under its organic act. That Congress thus intended is clear because section 11 of the Clayton Act provides for quasi-judicial hearings culminating in findings as to the facts and orders, including orders to cease and desist, and, without the power to compel the production of evidence in the course of proceedings thereunder, the danger of improvident orders lacking bases in fact would be great. We hold, therefore, that there is sound legal basis for the issuance and enforcement of the Commission's processes requiring the production of appropriate information in Clayton Act inquiries and adjudicative proceedings.'It is conceded that if the Commission were conducting an investigation under section 5 or section 6 of the Trade Commission Act into the discriminatory practices of the corporations here being investigated, it would have power to issue subpoenas under section 9 of the Act and to use the information thus obtained in a subsequent proceeding to enforce the provisions of the Clayton Act. Certainly the power of the Commission to issue subpoenas and conduct the investigation is not less because of the fact that it gives notice in advance that the information obtained is to be so used; and the filing of the complaint under the Clayton Act amounts to no more than this. To deny such power to the Commission would in large measure defeat the purpose which Congress manifestly had in mind in the enactment of these statutes; and we find nothing in the language or history of either statute which at this late day requires such a result.
 
 
 9
 The contention that the subpoenas authorize searches and seizures violative of the Fourth Amendment is so lacking in merit as not to warrant discussion. See United States v. United States District Court for the Southern District of West Virginia, 4 Cir., 238 F.2d 713; Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 202-211, 66 S.Ct. 494, 90 L.Ed. 614; Endicott Johnson Corp. v. Perkins, 317 U.S. 501, 510, 63 S.Ct. 339, 344, 87 L.Ed. 424. As said in the case last cited:
 
 
 10
 'The subpoena power delegated by the statute as here exercised is so clearly within the limits of Congressional authority that it is not necessary to discuss the constitutional questions urged by the petitioner, and on the record before us the cases on which it relies are inapplicable and do not require consideration.'
 
 
 11
 The subpoenas did not violate the rule of reasonableness laid down in Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652. They ask for records containing information clearly relevant to the charges being investigated and describe the records as accurately as they could be described under the circumstances. The order of the court below directed that none of the records be made public unless and until received in evidence and that documents containing trade secrets be placed in a confidential file in accordance with the practice followed by the Commission in such cases. There was further provision for the examination of records in the offices of the corporations being investigated and for the production before the Commission of only such as were material to the matter under inquiry.
 
 
 12
 The orders appealed from will accordingly be affirmed, and, in order that there may be no more delay than necessary in the proceedings before the Commission, mandate will issue twenty days after entry of the judgment of this court and will not be further stayed unless the appellant shall in the meantime have filed applications with the Supreme Court of the United States for writ of certiorari to review the judgment.
 
 
 13
 Affirmed.